**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

TEVON D. WILSON,

    Plaintiff,

    v.

                                 Civil Action No.: PWG-21-3094

MCTC ADMINISTRATION,
DIETARY OFFICER SHANK,

    Defendants.

**MEMORANDUM OPINION**

In response to the above-entitled civil rights complaint, Defendant Dietary Officer Brian Shank[1] filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 11. Self-represented Plaintiff Tevon D. Wilson opposes the motion. ECF No. 14. Defendant filed a Reply. ECF No. 17. There is no need for a hearing. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Defendant's motion, construed as a Motion for Summary Judgment, shall be granted.

**BACKGROUND**

Wilson alleges that on June 8, 2021, while working in the Dietary Department at Maryland Correctional Training Center ("MCTC"), a "situation" occurred between Defendant Shank and himself. ECF No. 1-2 at 1. He claims that Shank began cursing him out and called him a snitch on a daily basis in front of other inmates. *Id*. Wilson filed an administrative remedy procedure complaint ("ARP") to complain that Shank had created a hostile environment for him due to the verbal abuse he suffered. *Id*. He claims that Shank's actions, in addition to neglect by the MCTC administration, placed his safety in danger. *Id*.

---

[1]    Service was not accepted on behalf of "MCTC Administration." ECF No. 11-1 at 3, n. 1.

Shank denies calling Wilson a snitch but admits engaging in a verbal exchange with Wilson on June 8, 2021. ECF No. 11-3 at 1, ¶ 4 (Defendant's Exhibit 1). Shank describes the disagreement he had with Wilson, explaining that Wilson told him to "start doing your fucking job." *Id*. at 2 (Information Report). After telling Wilson what he should have been doing, Shank recalls Wilson suggesting they go into the "spray room and fight." *Id*. Shank declined the invitation and notified "M. Blevins CDOM" about the incident. *Id*. Shank noted that he did not feel threatened by Wilson, who he described as having "a poor attitude and work ethic." *Id*.

Wilson filed an ARP on June 24, 2021, about the incident with Shank. ECF No. 11-4 at 2-4. Wilson claimed that he had asked Shank to open a locked "grill" that he needed to go through in order to complete his task, but Shank refused to open it. *Id*. at 2. Wilson went to Lt. Blevins to ask if he could open the grill and Lt. Blevins asked Wilson where the other officers were. *Id*. at 2-3. When Wilson told Lt. Blevins where Shank was, Wilson claims Lt. Blevins called Shank and ordered him to open the gate. *Id*. According to Wilson, as Shank was walking toward the grill, he was shouting at Wilson and calling him a snitch because Wilson had gone to Shank's boss. *Id*. Wilson claimed that Shank had done this within earshot of all the inmates who were working in the area and that, two weeks later, he was being threatened and disrespected by other inmates. *Id*. at 3. Wilson concluded his ARP, stating that Shank "will be solely responsible for any conflict that [he] may encounter." *Id*. at 4.

The ARP was assigned to Lt. B. Reeder for investigation. ECF No. 11-4 at 7-8. Lt. Reeder's report states that "no other witnesses came forward" and that Shank and Wilson accused each other of instigating the dispute. *Id*. at 8. Lt. Reeder concluded that the matter "seems to be a case of 'he said/he said' where there was possibly a verbal altercation, but who started it is very unclear and contested." *Id*. Lt. Reeder therefore recommended dismissal of the ARP. *Id*. Lt. Reeder also

advised Shank that if he had engaged in the behavior described, it is unprofessional and, because it was observed by other inmates, could pose a risk to Shank's safety. *Id*. The ARP was dismissed on August 5, 2021. *Id*. at 10.

Lt. Draper, Institutional Coordinator, notified Wilson[2] by July 17, 2021 "Extension Form" that the response time for Wilson's ARP was extended to August 8, 2021. ECF No. 11-4 at 6. Despite that notification, Wilson filed an ARP with the Commissioner of Correction on July 21, 2021, indicating on the form that he had not received a response from the Warden. *Id*. at 11-12. The appeal was dismissed on September 15, 2021. *Id*. at 16.

On September 16, 2021, Wilson appealed the Commissioner's dismissal of his ARP to the Inmate Grievance Office ("IGO") where the director, F. Todd Taylor, Jr., conducted a preliminary review of the complaint. ECF No. 11-5 at 1, ¶ 2. The matter was referred to the Office of Administrative Hearings on December 21, 2021. *Id*. The original hearing date of March 29, 2022 was postponed to June 28, 2022. *Id*. at 3.

On July 27, 2021, Wilson claims he was physically assaulted by another inmate in the Dietary Department resulting in Wilson serving 45 days in segregation, loss of 30 days good conduct credits, and suspension of visitation privileges for 60 days. ECF No. 1-2 at 1. In addition, he was given 30 days of cell restriction and lost his phone privileges for 60 days. *Id*. Wilson lost his job and the opportunity to earn additional credits for his job assignment. *Id*.

The Notice of Inmate Rule Violation issued on July 27, 2021, was issued by Officer Harold Hall. ECF No. 11-6 at 2. Hall noted that Wilson and Inmate Karl Peck were both observed with "marks consistent with being in a physical altercation." *Id*. After an investigation which uncovered surveillance video of the two inmates fighting, both Wilson and Peck were charged with violation

---

[2]      Wilson claims he never received notification of the extension. ECF No. 14 at 1.

of Rule 102. *Id*. During an adjustment hearing held on August 6, 2021, Wilson alleged that the administration was negligent because Shank had called him a snitch and the inmates believed him. *Id*. at 5. Wilson maintained he should not be held accountable for fighting with Peck because Shank had created a hostile environment. *Id*. The hearing officer found the Notice of Infraction report credible, and that Wilson was "clearly the aggressor," noting that Wilson hit Peck numerous times and "held onto his shirt so he could not get away." *Id*. The hearing officer also noted that Peck did not hit back. *Id*. The Warden affirmed the guilty finding but reduced the sanction from a loss of 75 days of good conduct credit to 30 days of good conduct credit revoked. *Id*. at 8. Peck was found not guilty of the rule violation. *Id*. at 13.

On September 9, 2021, when his segregation sentence ended, Wilson states he "pleaded with the officers" not to put him back into general population because his safety was still at risk because of Shank's actions. ECF No. 1-2 at 1. Wilson states his refusal to move to general population resulted in an additional ten-day segregation sentence following a guilty finding on a written infraction. *Id*.

On September 18, 2021, Wilson's second segregation sentence ended, and he again pleaded with the officers not to put him back in general population because he feared for his safety. ECF No. 1-2 at 1-2. Wilson was nevertheless forced to move to Housing Unit 5, a general population building, where he remained housed at the time he filed his complaint. *Id*. at 2.

Wilson seeks "reparations" for the physical altercation he claims was "incited by Dietary Officer Shank" and for defamation of character. ECF No. 1 at 3. He adds that he seeks compensation for "the MCTC Administration's negligence and administrative misconduct." *Id*.

## STANDARDS OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specifically, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The court need not accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Well-pleaded facts as alleged in the complaint are accepted as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Factual allegations must be construed "in the light most favorable to [the] plaintiff." *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (quoting *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1062 (4th Cir. 1984)).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party

fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. On those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In this inquiry, a court must view the facts and the reasonable inferences drawn "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. V. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252. This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 448–49 (4th Cir. 2012). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." *Harrods*, 302 F.3d at 244 (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

## ANALYSIS

### A.    MCTC Administration

Wilson names "MCTC Administration" as a Defendant; however, MCTC Administration is not a "person" subject to suit under 42 U.S.C. § 1983. The text of § 1983 states in relevant part that: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis supplied). A number of courts have held that inanimate objects such as buildings,

facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"). Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person. To the extent that Wilson's intention was to name certain individuals who are a part of the administration at MCTC, he has failed to specify which of those officials he alleges has engaged in unconstitutional conduct. Accordingly, the complaint against MCTC Administration is dismissed.

## B.    Exhaustion of Administrative Remedies

Defendant Shank raises the affirmative defense that Wilson has failed to exhaust his administrative remedies. If Wilson's claim has not been properly presented through the administrative remedy procedure it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or

diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).[3]

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The

---

[3]     Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id*. at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id*., nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc*., 359 Md. 238, 753 A.2d 501 (2000).

grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee. C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.07.01.05B 2.28.01. Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." Moreover, the ARP request must be filed within 30 days of the date on which

the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[4] COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within

---

[4]     If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted their remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." This Court has consistently recognized this principle. *Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012) *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015). State statute of limitations applicable to the filing of § 1983 complaints are subject to equitable tolling during the period of time a prisoner is exhausting administrative remedies. *Battle v. Ledford*, 912 F.3d 708, 719–20 (4th Cir. 2019).

At the time Wilson filed his complaint in this Court, his IGO appeal regarding his claim that Shank called him a snitch was pending before the Office of Administrative Hearings and a hearing had been scheduled. Wilson denies receiving the Warden's extension of time for a response; however, he fails to address the fact that he filed his complaint in this Court before the IGO hearing and decision were completed.

Wilson's claim that he was assaulted by another inmate on July 27, 2021, and was improperly convicted of a rule violation was also not properly exhausted. ECF No. 11-6 at 5, 7-9. An appeal of disciplinary hearings must be filed with the IGO pursuant to COMAR 12.07.01.05(C). Wilson took the initial step of appealing the guilty verdict to the Warden but did not pursue his claim with the IGO. ECF No. 11-5 at ¶¶ 2, 4. Wilson has therefore failed to exhaust any implied claims regarding the disciplinary hearing such as a due process violation.[5] "[W]here, as here, an inmate in fact is able to participate in a grievance process, notwithstanding alleged obstacles, then that process remains 'available' for purposes of the PLRA . . . . [a]nd [when] the record . . . establishes conclusively that [a plaintiff] was able to submit multiple grievances . . . but failed to raise the . . . claim he seeks to litigate now" the complaint must be dismissed without prejudice. *Moss v. Harwood*, 19 F.4th 614, 623 (4th Cir. 2021).

## C.   Retaliation

In correspondence dated May 16, 2022, Wilson claimed that he was placed on disciplinary segregation because he refused to "sign a $2 co-pay for a sick call." ECF No. 13 at 1. Wilson

---

[5]   The Court notes that the disciplinary hearing officer's rejection of Wilson's assertion that he is not responsible for assaulting another inmate because Shank called him a snitch does not amount to a federal due process violation. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985) (due process is not violated so long as the disciplinary conviction is based on "some evidence"). This Court's role is not to revisit credibility determinations made in the context of prison disciplinary proceedings. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F.3d 159, 171-72 (4th Cir. 2019).

characterizes his assignment to disciplinary segregation as an act of retaliation. *Id*. Wilson also addresses this assertion in his Opposition Response. ECF No. 14. The correspondence was filed four days after Shank filed a Motion to Dismiss or for Summary Judgment. To the extent that Wilson is attempting to add a new claim, this Court may not address it because an opposition to a dispositive motion is not a vehicle for amending a pleading. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015), *see also Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd,* 141 F.3d 1162 (4th Cir. 1998), *Woodbury v. Victory Van Lines*, 286 F.Supp.3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint). Wilson's retaliation claim shall also be dismissed without prejudice.

**D.    Motion for Appointment of Counsel**

A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Exceptional circumstances include a litigant who "is barely able to read or write," *Whisenant* at 162, or clearly "has a colorable claim

but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008). Upon careful consideration of the motions and previous filings by Wilson, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. Further, given the disposition of this case, there is no colorable claim warranting appointment of counsel and therefore no exceptional circumstances exist that warrant the appointment of an attorney to represent Wilson under § 1915(e)(1). The motion is denied.

## CONCLUSION

By separate Order which follows, the Complaint as to MCTC Administration is DISMISSED; Defendant's Motion to Dismiss or for Summary Judgment is GRANTED; Mr. Wilson's Motion to Appoint Counsel is DENIED; and the complaint is DISMISSED without prejudice for failure to exhaust administrative remedies.


October 26, 2022_____                    _____/s/_____
Date                                             Paul W. Grimm
                                                 United States District Judge